UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Charito Santos,                                    File No. 21-cv-117 (ECT/ECW)

        Plaintiff,

v.                                                 **OPINION AND ORDER**

Experian Information Solutions, Inc.,

        Defendant.

---

Kimberly S. Moen Zillig and Andrew C. Walker, Walker & Walker PLLC, Minneapolis, MN, for Plaintiff Charito Santos.

Adam W. Wiers, Jones Day, Chicago, IL; Melissa Saldana, Jones Day, Dallas, TX; and Gregory J. Meyers, Lockridge Grindal Nauen PLLP, Minneapolis, MN, for Defendant Experian Information Solutions, Inc.

---

Plaintiff Charito Santos, M.D. alleges that Defendant Experian Information Solutions, Inc. violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, when it issued an updated credit report that left out some information regarding a mortgage on her home. Experian seeks dismissal of Dr. Santos's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Experian's motion will be granted because Santos does not allege facts plausibly showing that the at-issue credit report is "inaccurate" in the relevant sense, an essential element of each of her FCRA claims.

I[1]

Dr. Santos and her spouse, Lester Santos, "hold a joint mortgage with NewRez LLC[.]"  Am. Compl. ¶ 10 [ECF No. 15].  Dr. Santos "has remained current on her payments to her mortgage lender[.]"  *Id.* ¶ 15.  Though Lester "filed a petition for Chapter 13 bankruptcy relief on June 17, 2020[,]"*see In re Santos*, No. 20-41616 (Bankr. D. Minn.), Dr. Santos was not a party to the bankruptcy proceeding, and the NewRez mortgage "was *not* included or discharged in" Lester's bankruptcy, Am. Compl. ¶¶ 11, 14, 16.

Dr. Santos obtained a copy of her consumer credit report from Experian dated November 7, 2020.  *Id.*, Ex. A [ECF No. 15-1].  This report included a tradeline for the NewRez mortgage.  *Id.* ¶ 17.  In a section entitled "**Account Info**," the report listed the date the account was opened (October 17, 2014), the original balance of the mortgage ($380,000), the amount of the scheduled monthly payment ($2,570), and the length of the mortgage term (30 years) and identified the mortgage's "Status" as "**Open/Never late**." *Id.*, Ex. A at 2.  In this same "**Account Info**" section, dashes appeared next to categories titled "Balance," "Balance Updated," and "Recent Payment."  *Id.*  In a section entitled "**Payment History**," a symbol signifying the mortgage was "[c]urrent on payments" appeared for the months of January, February, April, May, and June 2020.  *Id.*  A "[n]o

---

[1]     In accordance with the standards governing a Rule 12(b)(6) motion, the following facts are drawn entirely from the Amended Complaint, *see Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014), and from "exhibits attached to the complaint whose authenticity is unquestioned[,]" *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citations omitted).  Here, these include credit reports and correspondence attached to Dr. Santos's Amended Complaint as Exhibits A, B, and C.  *See Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 768 (D. Minn. 2020) (considering credit reports at the Rule 12 stage).

data for this time period" (or "**ND**") symbol appeared for March 2020, and only dashes appeared for each month from July through December 2020. *Id.* Finally, in a section of the credit report entitled "**Balance Histories**," balance, scheduled payments, and amounts paid were shown for each month beginning July 2019 through May 2020. *Id.* at 2–3.

In correspondence dated November 9, 2020, Dr. Santos's counsel wrote to Experian disputing the accuracy and completeness of the November 7 credit report. *Id.*, Ex. B [ECF No. 15-2]. In the letter, Dr. Santos's counsel asserted that "[Dr.] Santos has been current on her payments, up to the present." *Id.* at 1. To support this assertion, Dr. Santos's counsel attached a mortgage statement from NewRez dated October 14, 2020. *Id.* at 3–4. Dr. Santos's counsel then asserted that the credit report "falsely state[d] that the mortgage loan was 'closed,' and that the loan ha[d] a $0 balance[.] *Id.* at 1.[2] "In fact," Dr. Santos's counsel wrote, "[Dr.] Santos is current on payments, the mortgage is open, and the loan has a current balance of $338,606.12." *Id.* Dr. Santos's counsel suggested that the report's "error[s]" were "the result of her husband filing bankruptcy." *Id.* And he asked that the report be corrected "immediately" to show that the mortgage was "current with an outstanding balance." *Id.*

---

[2]    The basis for these assertions is not clear. To reiterate, the credit report shows the status of the account as "**Open/Never late.**" Am. Compl., Ex. A at 2. The description of the account's status as "**Open**" seems to belie any notion that the account is closed, and the report nowhere refers to the account as "closed." *See generally id.* As noted, the credit report contains a dash after "Balance," not a dollar amount. *Id.* at 2. Dr. Santos and her counsel evidently thought that this dash would prompt a reader to think that the mortgage had a "$0 balance" and was "closed." *See* Am. Compl., Ex. B; *see also* Pl.'s Mem. in Opp'n at 7 [ECF No. 22].

In response to this request, Experian provided Dr. Santos with an updated credit report dated December 8, 2020.  Am. Compl., Ex. C at 1, 2 [ECF No. 15-3].  This report purported to show Dr. Santos's mortgage tradeline "[b]efore dispute" and "[a]fter dispute." *Id.* at 1–2.[3]  The "[a]fter dispute" or updated section of the report, like the November 7 report, showed the status of the mortgage account as "Open/Never late[.]"  *Id.* at 2.  The account history listed payments and balances for July 2019 through May 2020, but the "Recent balance" and "High balance" were "Not reported."  *Id.*  For June 2020 through October 2020, the payment history on the account had been changed to show "ND," or "No data for this time period[.]"  *Id.*  Experian noted that "[i]f an item [Dr. Santos] disputed [wa]s not in the list of results [], it was either not appearing in [her] credit file or it already reflected the requested status at the time of [its] reinvestigation."  *Id.*  Experian explained:

> If we were able to make changes to your credit report based on information you provided, or if you requested the addition of a statement, we have done so.  Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

*Id.*

---

[3]    It doesn't seem to matter, but the "[b]efore dispute" section didn't show the tradeline as it appeared in the November 7 credit report.  For example, the information appeared in a different format; the "Balance," "Balance Updated," and "Recent Payment" categories that were in the November 7 report do not appear the December 8 report; a new category (not in the November 7 report) entitled "**Recent balance**" included a "Not reported" reference; and the payment history from July 2020 onward under which dashes appeared in the November 7 report was just left blank in the December 8 report.  *Compare* Am. Compl., Ex. A at 2, *with* Ex. C at 1.

Dr. Santos brought this action originally in Minnesota District Court, Ramsey County, via a Complaint dated December 29, 2020.  Summons & Compl. [ECF No. 1-1]. Experian removed the case here on January 15, 2021, Notice of Removal [ECF No. 1], and then filed a motion to dismiss the original Complaint, Mot. to Dismiss [ECF No. 10].  Dr. Santos responded to Experian's first motion by filing the now-operative Amended Complaint.  In her Amended Complaint, Dr. Santos asserts three FCRA claims, all concerning the content of the updated December 8, 2020 credit report.  Dr. Santos alleges that Experian "willfully or negligently fail[ed] to reasonably reinvestigate [her] dispute[]" in violation of 15 U.S.C. § 1681i(a)(1)(A).  Am. Compl. ¶¶ 24–35 (Count I).  Dr. Santos next alleges that Experian "willfully or negligently fail[ed] to follow reasonable procedures to assure maximum possible accuracy of the information concerning [her]" in violation of 15 U.S.C. § 1681e(b).  Am. Compl. ¶¶ 36–48 (Count II).  Finally, Dr. Santos alleges that Experian "willfully or negligently fail[ed] to modify inaccurate or incomplete information concerning [her]" in violation of 15 U.S.C. § 1681i(a)(5)(A).  Am. Compl. ¶¶ 49–59 (Count III).  To support each of these claims, Dr. Santos alleges the same factual predicate: that the December 8, 2020 credit report was inaccurate or incomplete because it contained "information that the disputed account had no balance, and had no payments made on it since June, 2020."  *Id.* ¶ 26; *see also id.* ¶¶ 38, 51.

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog*, 760 F.3d at 792 (citation omitted).

Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The FCRA imposes procedural and substantive requirements meant to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Relevant here, a "consumer reporting agency" like Experian must "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit report. 15 U.S.C. § 1681e(b). "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . , before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer[.]" *Id.* § 1681i(a)(1)(A). "If, after any reinvestigation . . . of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified," the consumer reporting agency must:

(i)     promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii)    promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

*Id.* § 1681i(a)(5)(A).

Dr. Santos alleges that Experian violated each of these provisions: §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(5)(A).  To maintain a claim under § 1681e(b), Dr. Santos must allege facts plausibly showing that Experian "(1) reported inaccurate credit information about [her] and (2) failed to follow reasonable procedures to assure the accuracy of [her] credit report."  *Krosch v. Equifax Info. Servs., LLC*, No. 19-cv-2784 (NEB/KMM), 2020 WL 3036600, at *2 (D. Minn. June 5, 2020); *see Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011).  As with her § 1681e(b) claim, to maintain claims under §§ 1681i(a)(1)(A) and 1681i(a)(5)(A), Dr. Santos must plausibly allege that the disputed items of information contained in her file are inaccurate. *Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 892 (D. Minn. 2019) (collecting cases); *see Desautel v. Experian Info. Sol., LLC*, No. 19-cv-2836 (PJS/LIB), 2020 WL 2215736, at *4 (D. Minn. May 7, 2020) (noting that a § 1681i reinvestigation claim requires a plaintiff to "point to an item of information contained in the [agency's] file and [] prove that the item of information is inaccurate"); *Paul*, 793 F. Supp. 2d at 1102 (stating the "weight of authority" demonstrates "that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail" (citation omitted)) (collecting cases); *see also Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir.

2018) ("[A]lthough § 1681i does not on its face require that an actual inaccuracy exist, we, as with § 1681e claims, have imposed such a requirement." (internal quotation marks and citation omitted)).

"All courts agree that a report is inaccurate if it includes a statement that is inaccurate on its face." *Desautel*, 2020 WL 2215736, at *2. However, though a report is "technically accurate," numerous courts, including courts in this District, have found that "materially misleading" reports or omissions are "actionable inaccuracies" under the FCRA.[4] *Beseke*, 420 F. Supp. 3d at 891–92, 901 (collecting cases). A report or omission is "materially misleading" when it is "misleading in a manner that can be expected to harm the consumer." *Desautel*, 2020 WL 2215736, at *2. Though completeness is "an aspect of accuracy under § 1681e(b)," *Sepulvado*, 158 F.3d at 896, "[a] credit report does not become inaccurate whenever there is an omission, but only when an omission renders the report misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions," *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020) (internal quotation marks and citation omitted); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).

---

[4]     The Eighth Circuit has not decided whether misleading information can be actionable under the FCRA, *see Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013) (recognizing that this is an open question), but other circuit courts of appeals have held that it can, *see Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895–96 (5th Cir. 1998); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).

Here, Dr. Santos has not alleged facts plausibly showing that the updated December 8, 2020 report includes either facially inaccurate or materially misleading information about her.[5] This report described the status of the NewRez mortgage as "Open/Never late," so it seems implausible that a reader would understand from the report that the mortgage is closed. Am. Compl., Ex. C at 2. The report also showed in its "Account History" section the account balance, scheduled payment amount, paid amount, and the date payment was received separately for each month from July 2019 through May 2020. *Id.* In other words, as of May 2020, the report makes explicit that Dr. Santos had made payments on the

---

[5]       The Federal Trade Commission consistently has interpreted the FCRA not to require consumer reporting agencies "to include all existing derogatory or favorable information about a consumer in their reports." Statement of General Policy or Interpretation, Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18804-01 § 607-7 (May 4, 1990). In 2011, the FTC withdrew its 1990 commentary and issued a summary of its interpretations, which incorporates verbatim its 1990 commentary regarding § 1681e(b). Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 67–68 (2011), available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf. Relying on this commentary, "courts have held that the 'FCRA does not specifically require a reporting agency to affirmatively add credit data to a report.'" *Krosch*, 2020 WL 3036600, at *3 (quoting *Davis v. Equifax Info. Servs. LLC*, 346 F. Supp. 2d 1164, 1171 (N.D. Ala. 2004)); *see Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 843 (8th Cir. 2004) (giving weight to FTC commentary on the FCRA). Relying on these general principles, Experian cites several cases that it says show that Dr. Santos's allegations are insufficient to maintain a claim under § 1681e(b). *See* Def.'s Mem. in Supp. at 7–9 [ECF No. 19] (citing *Desautel*, 2020 WL 2215736, at *3; *Krosch*, 2020 WL 3036600, at *3–4; *Hammer*, 974 F.3d at 569; *Knox v. Equifax Info. Servs. LLC*, No. 3:19-cv-02581-E, 2020 WL 4339016, at *2 (N.D. Tex. July 28, 2020); and *Coyle v. Experian Info. Sols., Inc.*, No. 3:19-cv-02645-M, 2020 WL 3052228, at *2 (N.D. Tex. June 7, 2020)). In each of these cases, a court held that a plaintiff had not pleaded an actionable inaccuracy under § 1681e(b) where the consumer reporting agency failed to include an entire account or tradeline in a credit report. These cases seem distinguishable because Dr. Santos bases her claim on alleged inaccuracies in a *reported* account or tradeline.

mortgage and that the mortgage had a balance.  Dr. Santos's allegation that the report inaccurately or misleadingly showed that the "account had no balance, and had no payments made on it since June, 2020[,]" *id.* ¶ 26, seems based on the report's use of the "ND" (short for "No data for this time period") code for the period June through October 2020 and perhaps also the fact that the report showed the "**Recent balance**" as "Not reported[,]" *id.*, Ex. C at 2.  But this allegation is implausible.  It is not reasonable to understand "No data" and "Not reported" to mean anything but that Experian did not possess that data.  It is not reasonable to infer that Experian's use of these codes would cause a third party to reach adverse conclusions regarding Dr. Santos's credit.  Though Dr. Santos alleges that these elements of the report prevented her from refinancing the NewRez mortgage and negatively impacted her in other ways, she alleges no facts that might plausibly explain how or why a potential lender reasonably reached some adverse conclusion regarding her credit history or creditworthiness based on these elements. Finally, Dr. Santos has not cited, and research has not disclosed, any case in which allegations that a credit report used like codes or phrases have been deemed sufficient to plead the existence of a facial inaccuracy or materially misleading report or omission.[6]

---

[6]      Experian says the mortgage likely was reported this way in the December 8 report because the data furnisher, NewRez, followed industry practices in furnishing data to Experian that includes reporting "No data" in the payment history of an account when a consumer has filed for Chapter 13 bankruptcy and updating balances to "zero balance" after the bankruptcy has been confirmed.  Def.'s Mem. in Supp. at 7 n.3.  Because the mortgage is a joint account between Dr. Santos and Lester, Experian says that the omission of this data from Dr. Santos's credit report probably resulted from Lester filing for bankruptcy.  *Id.*  In her Amended Complaint, Dr. Santos alleges that she did not file bankruptcy and that the NewRez mortgage was not included or discharged in Lester's bankruptcy.  Am. Compl. ¶¶ 14, 16.  Dr. Santos does not allege that the possible

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.   Defendant Experian Information Solutions, Inc.'s Motion to Dismiss [ECF No. 17] is **GRANTED**; and

2.   Plaintiff Charito Santos's Amended Complaint [ECF No. 15] is **DISMISSED with prejudice**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 3, 2021                          s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court

---

explanation offered by Experian is what occurred, that a third party would reasonably infer from the "No data" and "Not reported" codes that she was in bankruptcy or that the mortgage account was part of a bankruptcy, that the harm she has suffered resulted from such an understanding, or that anything else in the reporting of her mortgage account was indicative of bankruptcy.